**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MITSUBISHI HEAVY INDUSTRIES, LTD.,**

    **Plaintiff,**

-vs-                                                                            **Case No. 6:10-cv-812-Orl-28KRS**

**GENERAL ELECTRIC CO.,**

    **Defendant.**

_____

# ORDER

Plaintiff, Mitsubishi Heavy Industries, Ltd. ("Mitsubishi"), has filed a Motion to Dismiss Defendant General Electric Co.'s Amended Counterclaim and to Strike Its Eighth Defense. (Doc. 60). Both the Amended Counterclaim and the Eighth Defense allege inequitable conduct, and in its motion Mitsubishi argues that the allegations of inequitable conduct do not meet the requirements of Federal Rule of Civil Procedure 9(b) and the law of the Federal Circuit announced in Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312 (Fed. Cir. 2009), and Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276 (Fed. Cir. 2011). The motion has merit and must be granted.

## Background

Mitsubishi sued General Electric Co. ("GE") alleging that GE had infringed its U.S. Patent No. 7,452,185 ("the '185 patent"), titled "Blade-Pitch-Angle Control Device and Wind Power Generator." GE maintains that this case is a part of a broader dispute between the two companies regarding patents related to wind turbines. GE's Amended Counterclaim

seeks a declaratory judgment of non-infringement, invalidity, and unenforceability of the '185 patent.  In the Amended Counterclaim, GE relies on the allegations contained in its Eighth Defense–Inequitable Conduct.  GE alleges that Mitsubishi sought expedited review of its application for the '185 patent based on issuance of the '312 patent by the Japan Patent Office "under the Patent Prosecution Highway [("PPH")] program between the U.S. Patent Office and the Japan Patent Office."  (Am. Answer & Countercl., Doc. 54, at 5).  The Submission of Request for Participation in the PPH Program contained a statement that "[n]o reference has been cited in the prosecution of Japanese ['312] patent application."  (Id. at 6-7).  GE asserts that this statement was false because five references were included in the "'Final Decision of Patent Grant' on the '312 Japanese application[] issued by the Japan Patent Office."  (Id. at 7).  Of the five references contained in the decision, three were not disclosed to the U.S. Patent Office.  (Id. at 8).

**Discussion**

Rule 9(b) requires that averments of fraud be stated with particularity.  The Federal Circuit has held that in pleading inequitable conduct in patent cases, in order to satisfy Rule 9(b) "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  Exergen, 575 F.3d at 1328. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  Id. at 1328-29.

GE has failed to meet this rigorous standard.

*Who*

Although the Eighth Defense goes into significant detail and actually mentions individuals associated with Mitsubishi by name, it fails to specify an individual or individuals responsible for making omissions and misrepresentations in the patent process. The introductory sentence in the Eighth Defense states that "[t]he '185 patent is unenforceable due to the inequitable conduct of the named inventors Kazunari Ide, Yoshoyuki Hayashi, and Masaaki Shibata, *and/or* the attorneys and agents substantively involved in the preparation or prosecution of the '185 patent (collectively 'Applicants')." (Doc. 54 at 4) (emphasis added). The Eighth Defense continues, stating that "Applicants made material false and misleading statements to the U.S. Patent and Trademark Office ('U.S. Patent Office') during the prosecution of the '185 patent" and that Applicants intentionally withheld material information from the U.S. Patent Office. (Id.).

The double "and/or" conjunction is too often used by lawyers trying to cover all bases. Its use often has unintended consequences. Through the "and" part of the conjunction, GE has managed to lump the named inventors, attorneys, and agents together under the title "Applicants," and through the "or" portion GE has disjoined them; the result is that GE has failed to specifically identify who is guilty of misconduct. Looking at the Eighth Defense, it is impossible to determine who is alleged to have been engaged in deceptive conduct—one or more of the named or unnamed Applicants. See Exergen, 575 F.3d at 1329 (finding that reference to "Exergen, its agents and/or attorneys" failed to name the specific individual associated with the filing or prosecution of the application "who both knew of the material

-3-

information and deliberately withheld or misrepresented it."). The Eighth Defense does not attribute a particular act or statement to a specific individual but instead refers to "Applicants."

Moreover, a strict application of the "or" alternative of the double conjunction in this case results in an allegation that either the named inventors or some other individual or individuals engaged in deceptive conduct. The other individual or individuals, who remain unnamed, are perhaps the only ones to have engaged in the suspect behavior. Under this construction, GE certainly cannot be said to have made an allegation against a particular person.

The Eighth Defense does refer to Manabu Kanesaka by name as the Mitsubishi attorney who signed the Submission of Request for Participation in the PPH Program, and the Eighth Defense alleges that the Submission contained false information. The false statements that GE contends were contained in the Submission were not, however, attributed to Manabu Kanesaka; instead, those statements were attributed to the Applicants.

GE's allegations as to who committed the acts of misrepresentation and omission in the Amended Counterclaim and Eighth Defense claiming inequitable conduct are impermissibly vague. By broadly referring to all those involved in the preparation and prosecution of the '185 patent, GE has not met its obligation to specifically identify those "who both knew of the material information and deliberately withheld or misrepresented it." Exergen, 575 F.3d at 1329. On this ground alone the Eighth Defense must be stricken and the Amended Counterclaim dismissed.

*What, Where, Why, and How*

The alleged misstatement is clear—in the Submission of Request for Participation in the PPH Program, Applicants stated: "No reference has been cited in the prosecution of Japanese patent application No. 2003-318312." (Doc. 54 at 6-7). This statement is allegedly not true because in fact, the "'Final Decision of the Patent Grant' on the '312 Japanese application, issued by the Japan Patent Office . . . had cited . . . five references." (Id. at 7). The claimed omission is similarly straightforward—"three of the five references cited by the Japan Patent Office were not otherwise disclosed to the U.S. Patent Office during prosecution." (Id.). Those three references are specifically identified and described by GE as related "to systems for controlling the pitch angle of blades on a wind turbine power generator." (Id. at 5).

As pointed out by Mitsubishi, however, there is no explanation as to the significance of these references to specific claims in the '185 patent. GE alleged in its Eighth Defense that "[a] reasonable examiner would have considered [the statement that no references were included in the Japanese '312 patent application] material, both because such false statements are per se material, and also because three of the five references cited by the Japan Patent Office were not otherwise disclosed to the U.S. Patent Office during prosecution and were material to the patentability of the claims of the [PPH] application which issued as the '185 patent." (Doc. 54 at 7). Neither of these arguments has merit.

GE, citing Therasense, argues that the affidavit of Manabu Kanesaka is sufficient to establish materiality because "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct

is material." Therasense, 649 F.3d at 1292.  However, the Therasense court went on to say that "[b]ecause neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality."  Id. at 1292-93.  The Federal Circuit has applied this reasoning to situations where false statements are included in "applications to make special"—such as the PPH application to expedite—and has concluded that such statements are not necessarily material, even when the application is successful.  Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V., 528 F.3d 1365, 1375 n.3 (Fed. Cir. 2008).  Even in such circumstances, "a court must determine whether the false statement was likely a but-for cause of the grant of the petition.  If not, a threshold level of materiality has not been established."  Id.  GE provides no information as to how the alleged false statement meets this but-for test.

Although GE on several occasions in the Eighth Defense states that the omission of the references was material, GE does not explain the basis for this assertion.  Like the defendant in Exergen, GE "fails to identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the 'what' and 'where' of the material omissions."  Exergen, 575 F.3d at 1329.  There simply are no such allegations.

With regard to why the references are material to patentability and how the examiner would have assessed the references, GE states that "[a] reasonable examiner would have considered the '050 Japanese application, the '412 Japanese application, and/or the '229 Japanese application material prior art relevant to the patentability of the claims of the '185

-6-

patent." (Doc. 54 at 10). More is now required to establish materiality under the but-for materiality test to establish inequitable conduct under Therasense. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Therasense, 649 F.3d at 1291. GE's Eighth Defense does not suggest whether a patent examiner would consider the allegedly undisclosed prior art but-for material, and if so, why.

Mitsubishi's final attack on GE's claim of inequitable conduct is that GE has failed to sufficiently allege scienter. The facts alleged in an inequitable conduct claim must "give rise to a reasonable inference of scienter, including both (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." Exergen, 575 F.3d at 1330. This issue brings us full circle. As discussed earlier, there are no allegations against specifically identified individuals but instead conduct attributed to a collection of individuals described as "Applicants." It is impossible to determine to whom GE ascribes knowledge and intent. The Eighth Defense and Amended Counterclaim fail to sufficiently allege scienter.

## Conclusion

For the foregoing reasons, Mitsubishi's Motion to Dismiss Defendant General Electric Co.'s Amended Counterclaim and to Strike Its Eighth Defense (Doc. 60) is **GRANTED**; General Electric Co.'s Amended Counterclaim (Doc. 54) is hereby **DISMISSED**; and General Electric Co.'s Eighth Defense is hereby **STRICKEN**. General Electric Co. may file a Second Amended Counterclaim and Amended Eighth Defense asserting inequitable conduct if it is able to do so with the particularity required by Rule 9(b) as described in Exergen Corp. v.

Wal-Mart Stores, Inc., 575 F.3d 1312 (Fed. Cir. 2009), and Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276 (Fed. Cir. 2011).  **Such amended filing shall be made on or before Friday, April 6, 2012**.

**DONE** and **ORDERED** in Orlando, Florida this 12th day of March, 2012.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record