**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MITSUBISHI HEAVY INDUSTRIES, LTD.,**

        **Plaintiff,**

**-vs-**                                                   **Case No.  6:10-cv-812-Orl-28KRS**

**GENERAL ELECTRIC CO.,**

        **Defendant.**

## ORDER

This patent infringement case involves devices for controlling the pitch angles of blades on wind turbines. Plaintiff, Mitsubishi Heavy Industries, Ltd. ("Mitsubishi"), filed this suit against Defendant, General Electric Co. ("GE"), alleging that GE, through the control systems in its wind turbines, has infringed U.S. Patent No. 7,452,185 ("the '185 Patent"). (Compl., Doc. 1). GE denies infringement and has filed a Counterclaim seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of the '185 Patent. (Second Am. Answer & Countercl., Doc. 149).

The case is currently before the Court on GE's Motion for Summary Judgment Regarding Non-Infringement and Invalidity[1] (Doc. 108). Mitsubishi has filed under seal a memorandum in opposition, and GE has filed a Reply (Doc. 135). Having considered the

---

[1] GE does not seek summary judgment on its claim of unenforceability, which is based on assertions of inequitable conduct. Mitsubishi has moved for summary judgment on that issue, but Mitsubishi's motion (Doc. 111) is not addressed in this Order.

parties' submissions and argument of counsel,[2] the Court concludes that GE's motion must be granted as to non-infringement and has been rendered moot as to invalidity by the Court's claim construction Order.

## I.  Background

### A.  Wind Turbines and Pitch Control Technology

Wind turbines convert the kinetic energy of the wind into mechanical energy that can be used to produce electricity. Modern wind turbines typically consist of, among other components, a supporting structure called a tower and a rotor having a hub and three blades. Wind causes the blades to turn, and the blades drive the rotor to power a generator that converts the wind's kinetic energy into electricity.

A means of controlling and adjusting the "pitch angles" of the blades—that is, the angles at which the blades are held in orientation to the wind by the hub to which they are attached—is typically employed in modern wind turbines. Through such pitch control, the power generated by the turbine can be optimized and the life of the blades can be extended by controlling the loads that the blades encounter. Blade pitch angles can be set individually, collectively, or as a combination of an individual value and a collective value.[3]

However, because modern wind turbines can have towers more than three hundred feet tall to support their large blades, the conditions encountered by the blades can vary

---

[2] The Court heard oral argument on the motion on May 16, 2012. (See Mins., Doc. 168; Hr'g Tr., Doc. 172).

[3] It is undisputed that the '185 Patent did not invent the concepts of individual pitch control or collective pitch control, but it includes components of both.

significantly as they turn[4]—resulting in varying loads on the blades through their rotation—and therefore, use of a common pitch angle generally does not yield optimal results; on such machines, individual pitch control is necessary to optimize turbine performance and extend blade life. Not to be confused with "pitch angle," a blade's position around the rotor is referred to as the "azimuth angle"—for example, the azimuth angle of zero is at the top center position of the tower, and there are azimuth angle values from zero to 360 degrees as a blade makes its rotation.

B.  The '185 Patent

The '185 Patent, titled "Blade-Pitch-Angle Control Device and Wind Power Generator," issued on November 18, 2008, and is assigned to Mitsubishi. The '185 Patent contains five claims, and Mitsubishi alleges that GE infringes Claims 1 and 5. Claim 1 recites:

> The invention claimed is:
> 1. A blade-pitch-angle control device used for a wind power generator having a plurality of blades, the blade-pitch-angle control device comprising:
>   a memory device in which predetermined parameters that affect the load fluctuation of the blades, azimuth angles, and pitch-angle command values are **stored in association with each other**;
>   an azimuth-angle detecting device that detects the azimuth angle of each of the blades;
>   a parameter-detecting device that detects the predetermined parameters;
>   a command-value receiving device that receives the **pitch-angle command values** for each of the blades from the memory device, the pitch-angle command values being

---

[4]For example, the wind at the top of the rotation is generally stronger than at the bottom of the arc, and the tower itself can also affect the loads on the blades.

>   > **selected on the basis of** the azimuth angle of each blade detected by the azimuth-angle detecting device and the predetermined parameters detected by the parameter-detecting device; and
>   >
>   > a pitch-angle-control command-value generating device that generates pitch-angle-control command values for individually controlling the pitch-angle of each blade on the basis of the pitch-angle command values received by the command-value receiving device and a **common-pitch-angle command value** that is common to each blade, the common-pitch-angle command value being determined by output information of the wind power generator.

('185 Patent col.18 ll.17-43). Claim 5 begins:

>   > 5. A wind power generator having a plurality of blades, comprising:
>   > a blade pitch angle control device including
>   > a memory device . . . .

(Id. col.19 ll.5-8). It then is identical to Claim 1 from "memory device" on. (Id. col.19 l.8-col.20 l.15).

### C. GE's Accused Products

Mitsubishi alleges that GE's wind turbines that contain systems called "Advanced Controls" and "Model-Based Controls" ("MBC")—which enable these wind turbines to perform individual blade pitch control—infringe Claims 1 and 5 of the '185 Patent. GE denies that either of these control systems infringes the '185 Patent and accordingly has moved for summary judgment of non-infringement. GE has also moved for summary judgment on the issue of invalidity of the claims, asserting that if the Court agrees with Mitsubishi's proposed claim construction the '185 Patent is anticipated by prior art.

### III. Summary Judgment Standards

"Summary judgment is appropriate when, drawing all justifiable inferences in the

nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir. 2010). "When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). In patent cases, "[s]ummary judgment on the issue of infringement [or non-infringement] is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359,1364 (Fed. Cir. 2005).

### III.  Discussion

#### A.  Non-infringement

In arguing for summary judgment of noninfringement, GE asserts that there is a "complete absence of evidence" that the fourth element of Claim 1 and the identical fifth element of Claim 5—which describe the "command-value receiving device"—are met by Advanced Controls or MBC and that therefore, these systems do not infringe as a matter of law. (Doc. 108 at 18).[5] As earlier noted, these elements read: "a command-value receiving device that receives the pitch-angle command values for each of the blades from the memory device, the pitch-angle command values being selected on the basis of the azimuth

---

[5] GE's counsel explained during oral argument that GE believes it does not "practice a number of the claim elements of claim one and claim five" but that for summary judgment purposes GE has focused only on the "command-value receiving device" element. (Hr'g Tr., Doc. 172, at 57-58).

angle of each blade detected by the azimuth-angle detecting device and the predetermined parameters detected by the parameter-detecting device."

GE argues that there is no factual dispute as to the fundamental nature of its pitch control systems and that the pitch-angle control values in Advanced Controls and MBC are calculated rather than received and selected from a memory device. Mitsubishi, however, responds that "there is no contradiction between calculating pitch values and retrieving them from a memory device" and that if the accused device does both, it still infringes. Moreover, Mitsubishi contends that GE's wind turbines do retrieve pitch angle values from a memory device in any event. Mitsubishi argues that at a minimum there are issues of fact remaining for trial on the issue of infringement.

### 1. Evidentiary Framework

"A court determines patent infringement by construing the claims and then applying that construction to the accused process or product." Bus. Objects, S.A. v. Microstrategy, Inc., 393 F.3d 1366, 1371 (Fed. Cir. 2005). GE, as the accused infringer and the moving party, "is entitled to summary judgment of no infringement only if the facts and inferences, when viewed in the light most favorable to [Mitsubishi], would not persuade a reasonable jury to return a verdict in favor of [Mitsubishi], the non-moving party." Id. at 1371-72 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device." Dynacore Holdings Corp. v. U.S.

Philips Corp., 363 F.3d 1263, 1278 (Fed Cir. 2004). Where an expert's opinions are "conclusory assertions, reached using words in ways that contradict their plain meaning, that a critical claim limitation is found in the accused device," the opinions do "not create a material factual dispute for trial." Id.

### 2. Claim Construction

The parties filed their summary judgment motions and their claim construction motions within a few days of one another. Since the filing of GE's summary judgment motion, the Court has construed the claim terms that were disputed by the parties. The Court construed "stored in association with each other" in the "memory device" element of the claim as "stored in advance in memory in a manner that reflects an association with each other." Additionally, the term "selected on the basis of" in the "command-value receiving device" element was interpreted to mean "selected from among the stored pitch-angle command values in memory based on." Thus, GE's motion for summary judgment of non-infringement will be analyzed using these constructions.

### 3. Application of Construed Terms to the Accused Systems

GE's accused systems contain several component pitch values that are combined to determine the final individual pitch values that are sent to the turbine blades. For example, in GE's Advanced Controls,[6] the final pitch value for each blade is obtained by adding together three values: (1) the "asymmetric pitch value" for the particular blade (denoted

---

[6] Advanced Controls and MBC are similar but not identical systems. Only Advanced Controls is specifically discussed herein; the allegedly infringing values are contained in at least Advance Controls if not both systems. To the extent a form of the subject values is also in MBC, the analysis and result are the same.

PitchALC1, 2, or 3); (2) the "pitch offset value" for that blade (denoted Pitch.Correction.1, 2, or 3) also referred to as "AeroBalance"); and (3) the "collective pitch value" (denoted by Collective.Pitch).[7]  Additionally, a "pitch limiter" referred to as the "Lower Pitch Limit" is part of the process of determining the final pitch values.

In response to GE's summary judgment motion asserting a lack of evidence of infringement based on any of the pitch values in its systems, Mitsubishi has identified two GE pitch values that it alleges meet the claim limitations—the "pitch offset value" or AeroBalance value and the "Lower Pitch Limit"—and has submitted a declaration from its expert[8] explaining its position.  These two values are addressed in turn.

AeroBalance

AeroBalance is an algorithm that calculates a "pitch offset value" for each blade using measurements taken by proximity sensors.  The stated purpose of this value is to compensate for variations in blade structure due to wear and tear and manufacturing differences or defects; GE has analogized this feature to balancing the tires on an automobile.  As explained by Mitsubishi's expert, Dr. Van Schoor, every twenty minutes the

---

[7]The computation of these values is evidenced in schematic drawings that have been filed under seal (Ex. 6 to Doc. 108).  The technology at issue is complicated; the simplified equation for the first blade, for example (without elaboration of the manner in which each component is calculated), has been represented as:
Blade Pitch1 = PitchALC1 + Pitch.Correction1 + Collective.Pitch.

[8]Mitsubishi has submitted three declarations of its expert, Dr. Marthinus Van Schoor, in this case—one (Doc. 113-3) with its Markman motion; one (under seal) with its response to GE's summary judgment motion; and one (Doc. 128-2) with its response to GE's Markman motion.  The declaration discussed herein is the declaration that was submitted with the summary judgment response and shall be referred to as "Second Van Schoor Declaration."

AeroBalance "pitch offset values" are calculated and are stored in memory for use during the following twenty minutes.[9] (Second Van Schoor Decl. ¶ 12). Every fifty milliseconds, these values are read out from memory in order to add them to other pitch-angle command values as denoted in GE's technical diagrams. (Id.).

In Dr. Van Schoor's opinion, the selecting of the AeroBalance "pitch offset values" system meets the limitations of the "command-value receiving device" element of the asserted patent claims. (Id. ¶ 13). He opines that the process of determining the pitch offset values every twenty minutes is based on predetermined parameters and also on azimuth angles, which are used to convert shaft displacement values to other values that are inputs to parameter averages. (Id.).

GE argues that the pitch offset values calculated in AeroBalance are not selected on the basis of azimuth angle and predetermined parameters as required by the claim limitations; instead, they are stored in memory for twenty minutes and continuously applied to a specific blade, if needed, regardless of the blade's azimuth angle. Additionally, GE points out that Dr. Van Schoor acknowledged in his deposition that "[t]he pitch-correction value that's being used from the aerobalance algorithm is being used regardless of what the present azimuth angle of each blade is." (Van Schoor Dep., Ex. 2 to Doc. 108, at 130, cited in GE's Reply Mem. at 4).

The question of whether azimuth angle is part of the calculation of AeroBalance does

---

[9]Dr. Van Schoor notes that GE's expert, Dr. Slocum, thought this process occurred every five minutes rather than every twenty minutes, but Dr. Van Schoor explains that it makes no difference to his analysis whether the time increment is five minutes or twenty minutes. (Second Van Schoor Decl. ¶ 12).

not result in denial of summary judgment. Dr. Van Schoor acknowledged in his deposition that the AeroBalance value is applied for twenty minutes to a blade—as the blade rotates around and around—and is used regardless of that blade's azimuth angle. Thus, it cannot be said that the AeroBalance value is selected on the basis of azimuth angle as required by the claim limitation.

To adopt Dr. Van Schoor's proposal would be to equate calculating a value using an azimuth angle to selecting a value based on azimuth angle—a position that the Court already rejected in its claim construction Order. Furthermore, the AeroBalance values are not "stored in advance" in the memory device as required under the Court's claim construction of "stored" in the "memory device" element of the claims. Mitsubishi's position in this litigation has been that the twenty-minute storage and re-use of AeroBalance values qualified as "stored," arguing that calculating a value during turbine operation and then storing it satisfies the "stored" limitation. However, the Court has construed "stored" to mean "stored in advance," and calculation during turbine operation followed by storage does not satisfy "stored in advance."[10]

In sum, because AeroBalance values are not "selected on the basis of azimuth angle" or "stored in advance," GE does not literally infringe through use of these values in its control

---

[10] As earlier noted, the parties filed their summary judgment motions within a few days of filing their Markman motions, and thus they did not have the benefit of the Court's claim construction prior to preparing their summary judgment motions. To the extent Mitsubishi now relies on claim construction arguments that have been rejected, those arguments fail.

In addition to the "stored in advance" problem, the Aerobalance values are not "stored in association with" azimuth angles or predetermined parameters either. For this reason as well, the AeroBalance pitch offset value does not support a finding of infringement of the asserted claims.

-10-

systems.

<u>Lower Pitch Limit</u>

The Lower Pitch Limit has been explained as a limit below which the blades cannot go; in other words, the pitch angles will not be set below that value. (<u>See, e.g.</u>, Van Schoor Dep. at 122). GE has described the Lower Pitch Limit as a safety mechanism for the blades that prevents the pitch angle from going past a value that can damage the system. (<u>See, e.g.</u>, Slocum Rebuttal Report, Ex. 11 to Doc. 108, at 23). It is undisputed that the Lower Pitch Limit is not a calculated value; it is a stored value tied to generator output.

Mitsubishi's expert explains in his declaration that a number of Lower Pitch Limit values are stored in memory as part of controller startup, and they form what GE refers to as "controller parameters"[11]—a set of values that the controller sets up during startup for use in future operation. (Second Van Schoor Decl. ¶ 7). GE's controller code can choose a new Lower Pitch Limit every fifty milliseconds, and the code picks a value of Lower Pitch Limit based on generator output. (<u>Id.</u> ¶¶ 8-9). That value is then compared to pitch-angle command values that are calculated by other means using measured azimuth angles; if the Lower Pitch Limit is higher than the calculated pitch-angle command value, the Lower Pitch Limit is used to position the blade. (<u>Id.</u> ¶ 10). If the calculated pitch-angle command value is higher, it is used.

In Dr. Van Schoor's opinion, the selection from memory of the Lower Pitch Limit

---

[11]Dr. Van Schoor clarifies in his declaration that these "controller parameters" do not have the same meaning as the "predetermined parameters" in the patent claims. (Second Van Schoor Decl. ¶ 7).

-11-

values meets the "command-value receiving device" element of the asserted claims, and based on this opinion, Mitsubishi asserts that GE is not entitled to summary judgment of noninfringement. Dr. Van Schoor explains that the process of deciding which Lower Pitch Limit is chosen is based on generator output power—a "predetermined parameter" in the sense of the patent claims—and is also based on azimuth angle because azimuth angle is an input to the other pitch angle command values to which the Lower Pitch Limit value is compared. (Id. ¶ 11).

GE counters that a Lower Pitch Limit is not selected from memory "for each blade" within the claim language but instead is a collective value that is set for all three blades; it is simply a value below which the three blades cannot be pitched. GE maintains that the Lower Pitch Limit is not selected based on azimuth angle but instead only on generator output.

For the purpose of summary judgment, GE's assertion that the Lower Pitch Limit is a "collective value" rather than a "pitch-angle command value for each of the blades" is rejected. Even though one Lower Pitch Limit is in effect at a given time—based on generator output at that time—that Lower Pitch Limit is compared to the calculated values for each of the blades to determine what pitch-angle command value will be used. Thus, one blade could be set using the Lower Pitch Limit value and another could be set using the alternative, calculated value—as both experts acknowledged in their depositions and as is consistent with the rest of the record evidence explaining the use of this value. (See, e.g., Van Schoor Dep. at 122-23). The Court thus cannot conclude that the Lower Pitch Limit is a "collective value" as that term has been explained by the experts.

However, GE's assertion that the Lower Pitch Limit is not selected based on azimuth angle is supported by the deposition testimony of Dr. Van Schoor; he acknowledged that Lower Pitch Limit is determined by power, as indicated in the GE technical diagram upon which he relied in his initial expert report.  (See Van Schoor Dep. at 120-22, 126; see also Van Schoor Initial Report, Ex. 10 to Doc. 108, at 44).  Mitsubishi, on the other hand, asserts that the Lower Pitch Limit is "selected on the basis of azimuth angle" because azimuth angle is an input in the calculation of the alternative pitch value against which the applicable Lower Pitch Limit is compared.

The parties are addressing two different purported "selections" of Lower Pitch Limit.  GE is addressing the "selection" of the applicable Lower Pitch Limit from the possible Lower Pitch Limits as a function of power output.  Mitsubishi, in contrast, is addressing the subsequent potential "selection" of the applicable Lower Pitch Limit when it is compared to a calculated pitch-angle value; if the calculated pitch-angle value is too low, the applicable Lower Pitch Limit is used in its stead.  It is plain that azimuth angle is not part of the former; whether it is part of the latter is a more complicated matter, though after consideration the Court concludes the selection of a Lower Pitch Limit in the second sense is not based on azimuth angle either.

The use of azimuth angle in calculating an individual pitch-angle command value that is then compared to the Lower Pitch Limit—followed by selection of the Lower Pitch Limit—does not amount to selecting a pitch-angle command value based on azimuth angle. The Lower Pitch Limit is chosen over the other, calculated pitch-angle command value—if at all—based on a numerical comparison between the two, not based on a blade's position.

-13-

The same Lower Pitch Limit is applicable at a given time to each blade equally—again, based on power output—even though each blade is 120 degrees away from the other two at any given time. In essence, the Lower Pitch Limit is part of the calculation of the alternative pitch-angle values in that it sets a minimum for each determined value. The fact that azimuth angle might be an input into the calculation of the comparator pitch-angle command values does not satisfy the "selected on the basis of" limitation.

Further, the Court has construed "selecting on the basis of" as "selected from among the stored pitch-angle command values in memory based on."[12] There is no evidence or assertion that the alternative, calculated pitch-angle command values to which the Lower Pitch Limit is compared are stored pitch-angle command values; indeed, to be so they would have to be stored in advance rather than calculated during turbine operation, which they are not. Thus, when the Lower Pitch Limit is compared to these values, the selection that is being made is not "from among the stored pitch-angle command values in memory" as required by the Court's claim construction.

Finally, the Court cannot overlook the lack of evidence that the Lower Pitch Limit values are "stored in association with" azimuth angles as required by the "memory device" element of the claim. Even under Mitsubishi's argument that use of an azimuth angle in the

---

[12]During claim construction, both parties asserted that "selected" means "chosen from a limited range," but they disagreed on what that "limited range" was. Mitsubishi argued that the "limited range" was the finite set of pitch-angle command values that is mathematically possible. However, the Court agreed—based on the context of the claim language, which refers to storing values in the memory device and then receiving them from the memory device—with GE's assertion that the appropriate limited range is the range of pitch-angle command values stored in the memory device.

calculation of the comparator pitch-angle command value qualifies as "selecting" a Lower Pitch Limit based on azimuth angle, the Lower Pitch Limit would still somehow have to be "stored in association with" an azimuth angle for the claim limitation to be met.  There is no record support for storage of the comparator pitch angle for any time period at all,[13] much less "in advance" or "in association with"[14] a Lower Pitch Limit; there is no evidence of Lower Pitch Limits being stored in association with azimuth angles in any other manner either.

Accordingly, use of the Lower Pitch Limit in GE's accused systems does not literally infringe the asserted patent claims.

Doctrine of Equivalents

Mitsubishi also argues that GE's summary judgment motion does not address the doctrine of equivalents ("DOE") and that GE infringes under that doctrine.  Mitsubishi supports this assertion with the declaration of Dr. Van Schoor, in which the expert asserts that both the AeroBalance pitch offset value and the Lower Pitch Limit infringe the asserted claims under the DOE if they do not do so literally.[15]

---

[13]Mitsubishi has taken the position that "storage" that is only attendant to use of a value by the controller does not qualify as "storage."

[14]With regard to "stored in association with," in the claim chart in his initial expert report Dr. Van Schoor opined that "[t]he predetermined parameters, blade pitch angles, and azimuth angles are in association because, for example, they are stored for use in the blade-pitch angle device to produce a result as described." (Van Schoor Initial Report at 26-27). However, in the Markman Order, the Court rejected Mitsubishi's proposal regarding "stored in association with" because it divorced the concepts of association and storage. "Associated values that are stored" is not the same as values being "stored in association with" each other.

[15]In its Reply, GE argues that Mitsubishi is improperly making a new DOE argument in its summary judgment opposition that it had not disclosed in its interrogatory responses

"'Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." Absolute Software, Inc. v. Stealth Signal, Inc., 659 F.3d 1121, 1139 (Fed. Cir. 2011). In order for infringement to be established in this manner, it must be shown "that the difference between the claimed invention and the accused product [is] insubstantial." Stumbo v. Eastman Outdoors, Inc., 508 F.3d 1358, 1364 (Fed. Cir. 2007).

With regard to Lower Pitch Limit, Dr. Van Schoor opines that, to him, it is "insubstantially different to (a) read out a value from memory and to then use it unmodified versus (b) reading it out and performing limited calculations with it prior to using it." (Second Van Schoor Decl. ¶ 11). He also opines that "the relationship between predetermined parameters, azimuth angle values, and the acts of reading out from memory of pitch angle command values in the GE controllers appears to me insubstantially different from reading those values from memory 'based on' predetermined parameters and azimuth angle values." (Id.). As to AeroBalance, Dr. Van Schoor opines that "the way that the selection is made using the pitch offset values . . . would be insubstantially different from what is in the claim," citing the reasons he already articulated with regard to lower pitch limits. (Id. ¶ 13).

Dr. Van Schoor's conclusory assertions are insufficient to create a genuine issue of material fact as to infringement under the DOE. See Stumbo, 508 F.3d at 1365 (affirming summary judgment of noninfringement under DOE where engineering expert offered only

---

and that Dr. Van Schoor did not disclose in his infringement report. GE asserts that Mitsubishi's DOE argument fails on the merits in any event. Mitsubishi responds that it was not aware of GE's claim construction positions—which affects its latest DOE argument—until it received GE's expert's rebuttal report.

"cursory conclusions" in his declaration as to insubstantial difference between products). The Court rejected Dr. Schoor's opinions during claim construction as to the meaning of "selected on the basis of"—which he contended should be read to include computing or calculating pitch-angle command values instead of choosing them from the memory device—and to accept his conclusory opinions that GE's systems are insubstantially different from what is described in the '185 Patent would essentially require revisiting that determination. Even though Dr. Van Schoor is a person of skill in the art, his bare opinion does not overcome summary judgment under the DOE.

### B. Invalidity

GE has also requested summary judgment on the issue of invalidity, arguing that if Mitsubishi's proposed claim scope is adopted by the Court, a prior art reference—the LeMieux reference[16]—anticipates the '185 Patent. GE argues that Mitsubishi's proposed construction of "selected on the basis of"—to include not only selecting pitch values from the memory device but also obtaining pitch values that are not stored in the memory device through significant computation—would render the '185 Patent invalid in light of the LeMieux reference.

As earlier noted, the Court has construed the claim terms at issue, and in doing so the Court did not adopt Mitsubishi's proposed construction of "selected on the basis of." Because GE's motion for summary judgment of invalidity is based on the premise that Mitsubishi's claim construction position was adopted by the Court, this portion of GE's motion

---

[16](Ex. 3 to Doc. 108).

-17-

for summary judgment has been rendered moot.

## IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that GE's Motion for Summary Judgment Regarding Non-Infringement and Invalidity (Doc. 108) is **GRANTED** regarding non-infringement and is **MOOT** regarding invalidity.

**DONE** and **ORDERED** in Orlando, Florida this 5th day of July, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record