# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MITSUBISHI HEAVY INDUSTRIES, LTD.,**

    **Plaintiff,**

-vs-                                                    **Case No.  6:10-cv-812-Orl-28KRS**

**GENERAL ELECTRIC CO.,**

    **Defendant.**

_____

## ORDER

This patent infringement suit is before the Court on the Motion for Summary Judgment (Doc. 111) filed by Plaintiff Mitsubishi Heavy Industries, Ltd. ("Mitsubishi") on the issue of inequitable conduct asserted by Defendant, General Electric Co. ("GE"), in an affirmative defense and counterclaim.[1] GE has filed an Opposition (Doc. 129) to the motion, and Mitsubishi has filed a Reply (Doc. 138). As set forth below, Mitsubishi's motion is denied.

### I. Background

The patent at issue in this case—U.S. Patent No. 7,452,185 ("the '185 Patent")—relates to wind turbine technology and is assigned to Mitsubishi. The United

---

[1] In its motion, Mitsubishi also seeks summary judgment on GE's defenses of laches and waiver/estoppel as well as on the matter of whether "the Olsen reference" can be considered prior art. However, GE states in its response that it is no longer asserting the defenses of laches or waiver/estoppel and that it will not rely on the Olsen reference at trial. (See Doc. 129 at 2 n.1). Thus, these other portions of Mitsubishi's summary judgment motion have been rendered moot and will be denied as such.

States national stage application that ultimately became the '185 Patent was filed in 2006, but the '185 Patent claims priority based on two Japanese patent applications—JP 2003-318312 ("the '312 Japanese Application"), filed on September 10, 2003, and JP 2004-143642 ("the '642 Japanese Application"), filed on May 13, 2004. (See '185 Patent cover page & col.1 ll.7-14).

The '185 Patent was issued through the Patent Prosecution Highway program ("PPH"), pursuant to which an applicant receiving a ruling from either the United States Patent and Trademark Office ("USPTO") or one of several foreign patent offices, including the Japan Patent Office ("JPO"), that at least one claim in an application is patentable may ask the other country's patent office to fast-track examination of corresponding claims in a corresponding application. On December 4, 2007, the JPO issued a "Decision of Patent Grant" to Mitsubishi based on the '312 Japanese Application, allowing all five claims that were requested. (See Mitsubishi Ex. 6).[2] Relying on that grant, in May 2008 Mitsubishi applied for participation in the PPH,[3] and that request was granted on June 18, 2008. (See Mitsubishi Exs. 2 & 5). On July 14, 2008, the USPTO issued its Notice of Allowance of all

---

[2] Citations to exhibits are to the exhibits submitted with Mitsubishi's motion (Doc. 111) and GE's Opposition (Doc. 129).

[3] As explained in the PPH request, the U.S. application had initially claimed two Japanese priorities—the '312 Japanese Application (corresponding to claims 1-5 in the U.S. application) and the '642 Japanese Application (corresponding to claims 6-10 in the U.S. application). The '312 Japanese Application was granted without rejections on December 4, 2007 and the '642 Japanese Application was withdrawn because a request for examination was not made within three years of the filing of the application. Claims 6-10 of the U.S. application were then cancelled in a preliminary amendment "to be consistent with the allowed claims" in the '312 Japanese Application (Mitsubishi Ex. 5 at 4). Such consistency is required for participation in the PPH.

five claims corresponding to the claims of the '312 Japanese Application, (see Mitsubishi Ex. 2), and the '185 Patent issued on November 18, 2008.

In its Second Amended Answer and Counterclaim (Doc. 149),[4] GE alleges—in the eighth affirmative defense and in the counterclaim itself—that Mitsubishi engaged in inequitable conduct during prosecution of the '185 Patent before the USPTO and that therefore the patent is unenforceable. Specifically, GE asserts that Kei Oikawa ("Oikawa")—a manager in Mitsubishi's intellectual property department in Japan who was responsible for prosecution of the '312 Japanese Application—and Manabu Kanesaka ("Kanesaka"), a patent agent at an Alexandria, Virginia patent firm who submitted the request for participation in the PPH on Mitusbishi's behalf—failed to disclose to the USPTO a Japanese patent application ("the '050 Japanese Application") that was listed as a reference by the JPO in the Decision to Grant Patent.[5] Additionally, GE asserts that Kanesaka submitted a false statement to the USPTO in order to receive expedited consideration and to conceal the existence of the '050 Japanese Application. (Doc. 149 at 4).

It is undisputed that in its December 2007 "Decision of Patent Grant," the Japanese

---

[4]GE was permitted to file its Second Amended Answer and Counterclaim after Mitsubishi's Motion for Summary Judgment—directed at GE's Amended Answer and Counterclaim (Doc. 54)—had been filed. Upon motion by Mitsubishi, the Court previously notified the parties that it would apply the arguments in their motion papers to the Second Amended Answer and Counterclaim. (See Docs. 139 & 140).

[5]GE initially also asserted inequitable conduct based on the actions of Kazunari Ide, one of the inventors. However, GE notes in its Response that based on discovery it is no longer directing its inequitable conduct allegations toward Mr. Ide. (See Doc. 129 at 20 n.6).

examiner listed as references five documents, three of which[6]—including the '050 Japanese Application[7]—were not identified by Mitsubishi to the USPTO.  (See Mitsubishi Ex. 6; Mitsubishi's Answer to Second Countercl., Doc. 154, at 4).  It is also undisputed that in the "Submission of Request for Participation in the PPH Program" that was filed with the USPTO in May 2008, Kanesaka stated in part:  "No reference has been cited in the prosecution of Japanese patent application No. 2003-318312.  Therefore, no [Information Disclosure Statement] is filed for the purpose of the participation in the PPH Program."  (Mitsubishi Ex. 5 at 4).

The parties dispute the legal ramifications of Kanesaka's statement and of Mitsubishi's failure to otherwise disclose the documents listed as references in the Japanese patent grant decision.  In its motion for summary judgment, Mitsubishi asserts that GE cannot establish the required elements of specific intent to deceive and materiality with regard to the alleged misrepresentation and omission.  GE, on the other hand, maintains that fact issues remain as to both elements and that therefore Mitsubishi cannot prevail on the inequitable conduct question at the summary judgment stage of the case.

---

[6]The other two references of the five noted on the JPO Decision to Grant had been listed by Mitsubishi in an Information Disclosure Statement submitted to the USPTO in February 2006 by one of Kanesaka's partners.  (See GE Ex. 5).

[7]Although three references listed in the Decision of Patent Grant were not disclosed to the USPTO, the focus of the inequitable conduct allegations is now on only one of those references—the '050 Japanese Application.  (See, e.g., GE's Second Am. Answer & Countercl., Doc. 149, at 4).

-4-

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The proper inquiry . . . is 'whether the evidence presents a sufficient disagreement to require submission to [the factfinder] or whether it is so one-sided that one party must prevail as a matter of law.'" Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1185 (Fed. Cir. 1993) (quoting Anderson, 477 U.S. at 251-52).

## III. Discussion

As the Federal Circuit has explained, "[a]pplicants for patents have a duty to prosecute patents in the PTO with candor and good faith, including a duty to disclose information known to the applicants to be material to patentability." Purdue Pharma L.P. v. Endo Pharms. Inc., 438 F.3d 1123, 1128 (Fed. Cir. 2006) (citing 37 C.F.R. § 1.56(a)). "A breach of this duty may constitute inequitable conduct, which can arise from an affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive or mislead the PTO." Id.

"Inequitable conduct is an equitable defense to patent infringement that, if proved,

-5-

bars enforcement of a patent." <u>Therasense, Inc. v. Becton, Dickinson & Co.</u>, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (on rehearing en banc).  "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." <u>Id.</u> at 1287.  In <u>Therasense</u>, the Federal Circuit clarified that the elements of intent and materiality are "separate requirements," abolished its prior "sliding scale" approach to inequitable conduct determinations, and "tighten[ed] the standards for finding both intent and materiality."  <u>Id.</u> at 1288, 1290.  Despite this recent tightening of standards, however, Mitsubishi has not established entitlement to summary judgment on the issue of inequitable conduct.

<u>Materiality</u>

In <u>Therasense</u>, the Federal Circuit established that "as a general matter, the materiality required to establish inequitable conduct is but-for materiality."  <u>Id.</u> at 1291.  Under this standard, undisclosed "prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  <u>Id.</u>

This Court is unable to conclude at the summary judgment stage that the '050 Japanese Application is not "but-for material."  The parties vigorously dispute whether the USPTO would have allowed the claims of the '185 Patent if that reference had been disclosed, and GE's expert has opined that the '185 Patent is invalid as obvious in light of the '050 Japanese Application combined with other references. (<u>See</u> Opening Expert Report of Alexander Slocum, GE Ex. 3).  As the Federal Circuit noted in <u>Therasense</u>, "[o]ften the patentability of a claim will be congruent with the validity determination—if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference

is necessarily material." 649 F.3d at 1292.  The issue of invalidity—asserted by GE as a defense but not brought before the Court in a pretrial posture by either party—has not yet been resolved.  Moreover, "even if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the PTO's different evidentiary standards." Id. Mitsubishi has not established that the '050 Japanese Application is not "but-for material" at this point.

Moreover, while "but-for materiality" is the general standard established by the Federal Circuit in Therasense, the court also "recognize[d] an exception in cases of affirmative egregious misconduct," which includes "the filing of an unmistakably false affidavit." Id. Where there is misconduct of that type, "the misconduct is material." Id.  The Therasense court reasoned that "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent," id., and it viewed its egregious misconduct exception as "giv[ing] the test sufficient flexibility to capture extraordinary circumstances," id. at 1293.

GE asserts that Kanesaka's affirmative misstatement in the PPH application regarding lack of citation of references in the Japanese prosecution amounts to "affirmative egregious misconduct" and is therefore per se material.  Mitsubishi counters that even assuming arguendo that Kanesaka's statement was false, GE cannot establish that Kanesaka's statement is "affirmative egregious misconduct" because in his deposition Kanesaka denied knowing that any references had been cited and therefore his statement cannot be "egregious."  However, whether Kanesaka knew that the references were cited is an issue of fact that cannot be resolved in Mitsubishi's favor on summary judgment.

In sum, questions of fact remain regarding both "but-for" materiality of the '050 Japanese Application and whether Kanesaka's statement can be considered "affirmative egregious misconduct" that would render the misconduct material.

Intent

As earlier noted, "[t]o prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." Therasense, 649 F.3d at 1290.  "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy [the] intent requirement.  Id.  "'In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.'" Id. (emphasis removed) (quoting Molins PLC v. Textron, Inc., 48 F.3d 1172, 1181 (Fed. Cir. 1995)).  "In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."  Id.

"Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence."  Id.  And, in order to ultimately prevail on this defense, GE must persuade this Court that "the specific intent to deceive [is] 'the single most reasonable inference able to be drawn from the evidence.'"  Id. (quoting Star Scientific Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

The evidence in the summary judgment record is indeed indirect and circumstantial, consisting largely of the patent prosecution documents and the deposition testimony of Oikawa and Kanesaka—both of whom deny intending to deceive the USPTO or even

knowing of what was cited in the JPO's Decision to Grant Patent. The parties dispute the meanings of terms—including "prosecution" and "office action" as used by Kanesaka and on the PPH application forms—and each side has submitted the PPH rules and argued their import. GE has also submitted a PPH "Frequently Asked Questions" page that is directly on point to the circumstances of this case regarding the filing of Information Disclosure Statements[8]; Mitsubishi, however, asserts that that page was not available until 2011 and had not been posted prior to the conduct at issue here. This Court cannot resolve the question of intent to deceive at the summary judgment stage. GE will face a tough task in meeting the "single most reasonable inference" standard set forth in Therasense, but because credibility may be crucial this question cannot be determined on summary judgment.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion

---

[8] This excerpt from PPH "Frequently Asked Questions" on the USPTO website provides:

> Q1 (revised). The first action in the [Office of First Filing] is a first action allowance with no office actions. In the Decision to grant, the [Office of First Filing] examiner cited several references. Should I submit an [Information Disclosure Statement] listing those references, even though the references were not cited in the office action but instead were cited in the Decision to grant?
>
> A1. If the [Office of First Filing] examiner cited documents in the decision to grant, you will need to list those documents in an [Information Disclosure Statement] as part of your PPH supporting documents. The decision to grant is considered to be an office action.

(GE Ex. 7 at 4).

for Summary Judgment (Doc. 111) filed by Plaintiff Mitsubishi Heavy Industries, Ltd. is **DENIED in part** and **DENIED as moot in part** as set forth herein.

**DONE** and **ORDERED** in Orlando, Florida this 21st day of September, 2012.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record